**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| LBT IP II LLC<br><br>        Plaintiff,<br><br>    v.<br><br>Uber Technologies, Inc.<br><br>        Defendant. | Civil Action No.: 6:21-cv-01210<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff LBT IP II LLC ("Plaintiff"), for its Complaint against Defendant Uber Technologies, Inc. ("Uber" or "Defendant"), alleges as follows:

**NATURE AND BASIS OF THE ACTION**

1.      This is an action for patent infringement arising under the laws of the United States, 35 U.S.C. §§ 1 *et seq.* and results from Uber's unauthorized use of Plaintiff's patented innovations. Plaintiff seeks monetary damages, injunctive relief, and recovery of its reasonable attorneys' fees incurred in connection with this action.

2.      Plaintiff is the owner of U.S. Patent Nos. 7,728,724 ("the '724 Patent"), 7,598,855 ("the '855 Patent"), 8,531,289 ("the '289 Patent") and 8,224,355 ("the '355 Patent") (collectively, "the Asserted Patents"). As detailed herein, Uber infringes each of the Asserted Patents.

**PARTIES**

3.      Plaintiff is a Texas limited liability company with its principal place of business located at 455 Elm Street, Suite 100, Graham, Texas, 76450.

4.       On information and belief, Defendant Uber is a Delaware corporation with its principal place of business located at 1455 Market Street, Suite 400, San Francisco, California 94103. Defendant is registered to conduct business in Texas, and may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## JURISDICTION AND VENUE

5.       This is a civil action for patent infringement arising under the Patent Laws of the United States as set forth in 35 U.S.C. §§ 271, *et seq*.

6.       This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and pendant jurisdiction over the other claims for relief asserted herein.

7.       This Court has personal jurisdiction over Defendant, including pursuant to Tex. Civ. Prac. & Rem. Code § 17.041 *et seq*. Defendant has continuous and systematic business contacts with the State of Texas and the Western District of Texas. Defendant, directly or through intermediaries (including drivers) conducts business extensively throughout Texas, including this Judicial District and Division, by selling, offering for sale, and advertising its infringing products and services in the State of Texas, the Western District of Texas, and Waco, Texas.

8.       Defendant is registered with the Texas Secretary of State to conduct business within Texas.

9.       On information and belief, in addition to providing services such as Ride, Drive, Deliver, and Eats in the State of Texas, the Western District of Texas, and Waco, Texas, Defendant also employs software developers and engineers in the Western District of Texas, and conducts substantial software development and/or engineering in the Western District of Texas.

For example, Defendant has currently posted several dozen job openings on LinkedIn for jobs in Austin, Texas, the majority of which are for software engineer positions.

10.     Defendant operates the website https://www.uber.com/ and provides a mobile application in order to provide ride-hailing and food delivery services to users, including both riders and drivers, within Texas and the Western District of Texas.

11.     Defendant has operated ride-hailing and food delivery services offered to users in the State of Texas and the Western District of Texas, including Waco, Austin, El Paso, and San Antonio.

12.     Defendant has transacted and solicited business and actively advertised to residents within the State of Texas and the Western District of Texas and in this Division, including by actively recruiting and hiring drivers to provide Defendant's ride-hailing services and by offering those services to customers.

13.     This Court also has personal jurisdiction over Defendant because, in addition to Defendant's own online website and advertising within this judicial district, Defendant also has made its ride-hailing services available specifically within this District and this Division via the following means:

   A.     Offering ride-hailing services in and negotiating with cities throughout the Western District of Texas, including in:

- Waco (https://www.uber.com/global/en/cities/waco/);

- Austin (https://www.uber.com/global/en/cities/austin/);

- El Paso (https://www.uber.com/global/en/cities/el-paso/); and

- San Antonio (https://www.uber.com/global/en/cities/san-antonio/).

B.    Actively targeting advertising to residents of the Western District of Texas to serve as a driver for Defendant within the Western District of Texas (for example, Waco: https://www.uber.com/us/en/drive/waco/, which provides both nationwide and local perquisites to drivers).

C.    Actively promoting working for Uber to district residents who have downloaded the Uber Driver application, which includes the choice to "Drive with Uber" in a drop down menu in the Uber Rider application. Selecting "Driver with Uber" allows district residents to choose their city, such as by selecting "Waco, TX, USA" from a listing of cities, and sign up to drive with Uber.



*Uber Passenger Application Screenshots*

D.    Providing in-person driver support services via full-time and part-time employees to Uber's drivers at Uber Greenlight Hubs within the District, such as in Austin (507 Calles St. #120, Austin, TX 78702), as depicted below:

4



*Uber's Greenlight Hub Facility in the Western District of Texas*

E. On information and belief, instructing drivers in Texas and in the Western District of Texas about, and addressing drivers' questions regarding, Uber's services, which infringe Plaintiff's patents as set forth below.

14. Accordingly, specific and general personal jurisdiction exists over Defendant. This Court's personal jurisdiction over Defendant comports with the constitutional standards of fair play and substantial justice and arises directly from the Defendant's purposeful minimum contacts with the State of Texas and its infringement of the Asserted Patents.

15. Defendant is subject to this Court's specific and general personal jurisdiction in accordance with due process and/or the Texas Long Arm Statute, due at least to Defendant's substantial business in this forum, including: (i) conducting at least some of the infringing activities alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or (iii) deriving substantial revenue from goods and services provided to individuals in Texas and in this District. Moreover, Defendant has consented to personal jurisdiction in Texas by registering to do business in this State and appointing a registered agent in Texas to accept service on its behalf.

16.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b)-(c) and 28 U.S.C. § 1400(b) because Defendant has committed or induced acts of infringement in this District. In addition, Defendant maintains a regular and established place of business in this District.

17.     On information and belief, the Greenlight Hub is physically located in the Western District of Texas and is Defendant's regular and established place of business since July 2018.

18.     In addition to the foregoing, venue is proper at least because Defendant, in conjunction with its employee drivers, has committed acts of direct infringement of the Asserted Patents in the Western District of Texas at least by practicing the claimed inventions in this Judicial District.

19.     Alternatively, to the extent that those drivers are not employees of Defendant, Defendant's drivers' and riders' acts in this Judicial District are nevertheless attributable to Defendant, including under principles of joint infringement.

20.     Defendant has also committed acts of direct infringement in this District through other Uber employees who have practiced and continue to practice steps of the claimed methods in this District for development, testing, and/or demonstration purposes.

21.     Defendant also has induced infringement in this Judicial District.

22.     On information and belief, discovery will confirm that Defendant has further directly performed one or more steps of the accused methods in this District.

23.     Defendant's products and services, including at least its ride-hailing and food delivery systems, products, and methodologies embodied in Defendant's system, including but not limited to its computer systems, servers, drivers, and electronic connections and communications with drivers and passengers/riders ("the Uber Platform") are accused of infringing each of the Asserted Patents. For example, the technologies underlying the Uber

Platform implement the integrated processes by which Uber tracks the activities and location of its drivers and passengers and matches its drivers with passengers, as well as provides related monitoring, route management, location-based notifications and other related features and functions in support of its ride-hailing services. All four Counts of this Complaint relate to how the Uber Platform tracks locations and behaviors of its drivers, passengers and food recipients, as well as how it matches drivers with passengers. On information and belief, discovery will confirm that Defendant has further directly performed one or more steps of the accused methods in this District.

**DEFENDANT'S INFRINGING METHODS, SYSTEMS, AND PRODUCTS**

24.     Through the Uber Platform, Defendant offers, coordinates, and controls, among other things, ride-hailing and delivery services. For the purposes of this Complaint, the term "Uber Platform" encompasses all such hardware, applications, and functionalities and any related Uber technologies that interface with the Uber Driver and Rider Applications to provide ride-hailing and food delivery services. On information and belief, Uber employs hundreds of thousands of drivers in connection with its ride-hailing and food delivery services.

25.     For example, on information and belief, Defendant uses the Uber Platform, including the Uber Rider application and the Uber Driver Application, to operate, direct, and control ride-hailing services. Defendant operates a network infrastructure with its riders/passengers and drivers. Defendant operates, controls, and provides a "Rider" application that, among other things, allows Uber passengers/customers to request a ride. For the purposes of this Complaint, Uber Rider Application and passenger application/app, as well as any different, unambiguous iterations, are used interchangeably. Defendant operates, controls, and provides a "Driver" application that, among other things, allows Uber drivers to accept ride requests and

perform related activities. For the purposes of this Complaint, Driver Application/app, as well as any different, unambiguous iterations, are used interchangeably.

26.     The Uber Platform performs a method for determining location via a tracking device associated with an individual or an object to be located.

27.     Defendant requires both riders and drivers to download its software applications to their mobile computing devices, such as smartphones and tablets, before using and providing Uber's services.

28.     Because Uber's mobile applications must be installed on a mobile computing device, Defendant controls how its riders and drivers use the infringing features of Uber's Platform and products and perform infringing steps of the methods for ride-hailing.

29.     On information and belief, Uber drivers are employees of Defendant according to *People of the State of California v. Uber Technologies, Inc.*, Nos. A160701 and A160706 (Cal. Ct. App. Oct. 22, 2020).

30.     Further, on information and belief, Uber drivers are employees of Uber because: (i) Defendant is a transportation network company whose ride-hailing and food delivery business transports passengers and goods for compensation, and drivers perform work that is central, not tangential, to the usual course of Defendant's ride-hailing and goods transportation business, which would not be a viable business without its drivers; (ii) the performance of that work is not free from the control and direction of Defendant; (iii) Defendant sets drivers' qualification standards, solicits applications, conducts background checks on applicants, engages certain applicants as drivers while rejecting others, and enters into standard form contracts with drivers; (iv) drivers cannot build on their own passenger client base—they take rides provided by Defendant via the Driver app; (v) Defendant sets all prices and drivers cannot change or fix them; (vi) Defendant prescribes rules regarding car maintenance and manners that must be followed;

(vii) Defendant handles all payment processing; and (viii) Defendant approves driver applications and can cancel use of the platform by particular drivers and/or impose sanctions on drivers.

## DEVELOPMENT OF THE PATENTED TECHNOLOGIES

31.     Plaintiff is the owner by assignment of the Asserted Patents that were originally assigned to Location Based Technologies, Inc. ("LBT, Inc."), who is licensed to practice, and does in fact practice, the patented inventions. LBT, Inc. is a long-time innovator and pioneer in the field of geo-location technologies, including developing early systems to remotely monitor a device using geo-location, such as with GPS, cell towers and/or WiFi communications.

32.     The Asserted Patents originally were assigned to LBT, Inc. by their inventors. LBT, Inc. subsequently transferred ownership of the Asserted Patents, and the Plaintiff is the current owner of all rights, titles, and interests in and to the Asserted Patents.

33.     The innovations in the Asserted Patents began with inventor Joe Scalisi, a single dad and current resident of Austin, Texas, who needed a way to keep track of his highly social son who liked to wander their neighborhood after school. In the early 2000s, when consumer GPS was not yet widely available, Scalisi began developing the technologies to use GPS and cellular technologies to locate and track remote objects, and eventually launched the PocketFinder®, which is a keychain-sized device that can be carried in a pocket or backpack and can be geo-located using GPS and cellular technologies via an application (a.k.a., app) or a website.

34.     All four of the Asserted Patents are practiced by LBT, Inc.'s PocketFinder® products.

35.     As a result of its innovative instincts, determination, and perseverance, LBT, Inc. was awarded 41 U.S. utility and design patents, 17 registered trademarks, and 4 international patents. LBT, Inc. continues to sell its PocketFinder® products and services today.

36.     LBT, Inc. has marked its products with the Asserted Patents. The PocketFinder®
packaging   includes   the   word   "PATENTED"   accompanied   by   the   URL
http://locationbasedtech.com/index.php/legal/.   That   page   includes   a   link   labelled
"INTELLECTUAL PROPERTY" that points to a PDF titled "VIRTUAL PATENT MARKING,"
which lists all four of the Asserted Patents. This marking has been in place throughout the life of
the patents. Further, many of the claims to be asserted are method claims for which no marking is
required.

37.     The value of the PocketFinder® innovation has been recognized by industry. As
just one example, LBT, Inc. was approached by Apple, Inc. ("Apple") in 2011 at a trade show in
Florida with an interest which led to an exclusive contract to launch the PocketFinder® as an Apple
product. Apple had discussions with LBT, Inc. for approximately one year and ultimately reached
an agreement under which PocketFinder® was to be marketed by Apple and sold in Apple stores.
But shortly thereafter, Steve Jobs passed away. New management at Apple pivoted the company
away from third-party products and technologies in favor of homegrown technologies, which
caused the relationship between LBT, Inc. and Apple to end.

## THE PATENTS-IN-SUIT

38.     On June 1, 2010, the '724 Patent, titled "System for Locating Individuals and
Objects," was duly and legally issued by the United States Patent and Trademark Office
("USPTO") to Joseph F. Scalisi and Desiree C. Mejia, with LBT, Inc. as assignee. A copy of the
'724 Patent is attached hereto as **Exhibit A.**

39.     On October 6, 2009, the '855 Patent, titled "Apparatus and Method for Locating
Individuals and Objects Using Tracking Devices," was duly and legally issued by the USPTO to

Joseph F. Scalisi, David Morse and Desiree C. Mejia, with LBT, Inc. as assignee. A copy of the '855 Patent is attached hereto as **Exhibit B.**

40. On September 10, 2013, the '289 Patent, titled "Adaptable User Interface for Monitoring Location Tracking Devices Out of GPS Monitoring Range," was duly and legally issued by the USPTO to Joseph F. Scalisi, David M. Morse and Desiree Mejia, with LBT, Inc. as assignee. A copy of the '289 Patent is attached hereto as **Exhibit C**.

41. On July 7, 2012, the '355 Patent, titled "System and Method for Improved Communication Bandwidth Utilization When Monitoring Location Information," was duly and legally issued by the USPTO to Michael L. Beydler, Roger B. Anderson, Joseph F. Scalisi, Desiree Mejia and David M. Morse, with LBT, Inc. as assignee. A copy of the '355 Patent is attached hereto as **Exhibit D**.

42. Plaintiff is the owner of the entire right, title, and interest in and to the Asserted Patents, including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement of the Asserted Patents.

## United States Patent No. 7,728,724

43. The '724 Patent generally relates to a positioning and tracking system and method. In this system a monitoring station may receive a location request and communicate with a tracking device, which may transmit a position signal to the monitoring station.

44. In one embodiment, the '724 Patent claims a positioning and tracking method for locating an individual or object comprising: associating a tracking device with the individual or the object to be located; receiving a location request from a user; transmitting a signal from a monitoring station to the tracking device; activating a global positioning system circuit within the tracking device; communicating a reference signal to triangulate location information utilizing a

first transmitter/receiver station and a second transmitter/receiver station; receiving a global positioning system signal, a first transmitter/receiver station signal, and a second transmitter/receiver station signal; calculating location data responsive to the global positioning system signal, the first transmitter/receiver station signal, the second transmitter/receiver station signal, and the reference signal without line-of-sight between a global positioning system satellite and the tracked device; calculating the location data of the tracking device resulting from a comparison of measurements from GPS satellites to the tracking device, measurements of distances between two or more GPS satellites, and measurements of relative orientations of the two or more GPS satellites, the tracking device, and earth; transmitting the location data to the monitoring station to determine location of the tracking device; and informing the user of the location of the tracking device.

45.    The '724 Patent overcomes shortcomings in the prior art. The invention of the '724 Patent includes GPS systems with outdoor, line-of-sight uses, and also overcomes situations in which purely line-of-sight systems may be ineffective to find the location of an individual or an object when there were obstructions or when the individual or object was indoors.

### United States Patent No. 7,598,855

46.    The '855 Patent generally relates to a systems and methods for monitoring objects and individuals. The '855 Patent is a continuation-in-part of the '724 Patent.

47.    In one embodiment, the '855 Patent claims a method of determining location via a tracking device associated with an individual or an object to be located, the method comprising: a receiving a location request from a user; activating a positioning apparatus associated with the tracking device; transmitting to the tracking device: a first signal from a monitoring station; a second signal from a wireless location and tracking system; a third signal from a mobile

transceiver; and a fourth signal from an adjacent tracking device; determining which of the first signal, the second signal, the third signal, and the fourth signal match defined selection criteria stored in the tracking device; determining location data in part based on a signal selected utilizing the defined selection criteria; transmitting the location data to the monitoring station for analysis to determine a location of the tracking device; and informing the user of the location of the tracking device on a map.

48.    The '855 Patent overcomes shortcomings in the prior art.  The prior art to the '855 Patent provided limited flexibility to adjust a controlled monitoring area about an object, and further had limited ability to calculate positional data of objects when GPS data was limited.  The invention of the '855 Patent includes systems and methods that provide remote access to a user by wireless data transfer and/or wireless location and tracking data communication, particularly when GPS data is limited.

**United States Patent No. 8,531,289**

49.    The '289 Patent generally relates to a system for monitoring objects and individuals. The '289 Patent is a continuation of the '855 Patent, which is a continuation-in-part of the '724 Patent. In the system of the '289 Patent, a monitoring station is remotely accessible through a user interface. The interface is adapted to provide a visually cognizable rendering of an area and a tool useful for selecting at least a portion of said area, and to communicate a first request signal to provide location coordinates of a first tracking device.

50.    In one embodiment, the '289 Patent claims a system comprising: a first tracking device having a first transceiver configured to receive a first request signal from a remote user terminal, and to transmit a first reply signal that comprises a first identification code; and a second tracking device having a second transceiver that is configured to: (i) receive the first reply signal;

(ii) compare the first identification code to a stored identification code; (iii) determine location coordinates of the first tracking device; and (iv) communicate a second reply signal that comprises the location coordinates to a monitoring station connected to the user terminal in part responsive to verification of the first identification code.

51.     The '289 Patent overcomes shortcomings in the prior art, which was limited in multiple ways. Namely, prior art systems provided only limited flexibility to adjust a controlled monitoring area or for a user to choose and create custom maps to view and locate an object. Further, prior art systems had limited capability to view objects by a remote user, as well as limited ability to calculate positional data of objects when GPS signaling was not available. Moreover, inventive aspects, such as choosing and creating customer maps, particularly for viewing objects by a remote user, and calculating positional data of objects when GPS signaling were not available, were not well-understood, routine, or conventional at the time of the invention.

### United States Patent No. 8,224,355

52.     The '355 Patent is directed generally to a personalized format webpage that is generated to monitor location information. A graphical mapping module is disclosed to provide mapping tiles from multiple mapping service providers in response to user request for location information of a tracking device associated with an object or an individual.

53.     The '355 Patent claims a method and associated expanded cellular communication system for providing location information on a webpage for a user in a personalized user format. One exemplary method comprises: providing user access to a location management dashboard module in response to detection of a successful user logon; the location management dashboard module comprising a listing of one or more groups of tracking devices the user is capable of monitoring; providing a graphical mapping module comprising menu options in the personalized

14

user format; the menu options comprising one or more tile mapping controls as part of a wizard menu enabling the user to reposition graphical mapping tiles for the one or more groups of tracking devices from multiple mapping service providers, the graphical mapping tiles initially requested by the user on at least one tracking device of the listing of one or more groups of tracking devices; whereby the user repositions the graphical mapping tiles received as part of the initial request without re-accessing the websites of the mapping service providers; providing an alert message associated with the at least one tracking device in response to detection of the successful user login; providing a request signal to obtain location coordinates of the at least one tracking device of the listing of one or more groups of tracking devices; providing by the at least one tracking device a first reply signal that comprises a first identification code to identify the at least one tracking device; and displaying the location coordinates of the at least one tracking device to the user in response to the request signal.

54.     The '355 Patent overcomes shortcomings in the prior art, which provided a user only limited flexibility to adjust a controlled monitoring area about an object or to choose and create custom maps to view and locate objects. Further, prior art systems had limited ability to calculate positional data of objects when GPS signaling was unavailable, as well as limited flexibility to provide graphical displays that better utilize available system bandwidth and/or minimize data transfer and data overhead requirements.

## COUNT I

## <u>INFRINGEMENT OF THE '724 PATENT</u>

55.     Plaintiff repeats and realleges the above paragraphs, which are incorporated by reference as if fully restated herein.

56.    Plaintiff is the owner of all rights, title, and interest in the '724 Patent and, at a minimum, all substantial rights in the '724 Patent, including the exclusive right to enforce the patent and all rights to pursue damages, injunctive relief, and all other available remedies for past, current, and future infringement.

57.    Plaintiff and its predecessors in interest have never licensed the Defendant under the '724 Patent, nor has Plaintiff otherwise authorized the Defendant to practice any part of the '724 Patent.

58.    The '724 Patent is presumed valid under 35 U.S.C. § 282.

59.    Defendant operates, provides, and controls systems and methods that coordinate ride-hailing and food delivery services that use a passenger/customer application and driver application that communicate in real-time.

60.    On information and belief, Defendant, alone and/or jointly in conjunction with drivers, agents and/or parties under its control, has directly and/or indirectly infringed and continues to directly and/or indirectly infringe the '724 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by using computerized methods for coordinating, controlling and providing ride-hailing and food delivery services that are covered by one or more claims of the '724 Patent including Claim 13 of the '724 Patent without license or authority.

61.    For example, the infringing activities utilize applications operated or licensed by Defendant that respond to alerts made by the passenger (e.g., requesting an Uber vehicle) by automatically detecting available nearby drivers and assigning responsibility of passenger's alert to a driver (e.g., accepting the passenger's request for an Uber vehicle).

62.    These activities infringe at least Claim 13 of the '724 Patent.

63.     By way of example, method Claim 13 of the '724 Patent recites:

*A method for locating an individual or an object, comprising:*

*associating a tracking device with the individual or the object to be located;*

*receiving a location request from a user;*

*transmitting a signal from a monitoring station to the tracking device;*

*activating a global positioning system circuit within the tracking device;*

*communicating a reference signal to triangulate location information utilizing a first transmitter/receiver station and a second transmitter/receiver station;*

*receiving a global positioning system signal, a first transmitter/receiver station signal, and a second transmitter/receiver station signal;*

*calculating location data responsive to the global positioning system signal, the first transmitter/receiver station signal, the second transmitter/receiver station signal, and the reference signal without line-of-sight between a global positioning system satellite and the tracked device;*

*calculating the location data of the tracking device resulting from a comparison of measurements from gps satellites to the tracking device, measurements of distances between two or more gps satellites, and measurements of relative orientations of the two or more gps satellites, the tracking device, and earth;*

*transmitting the location data to the monitoring station to determine location of the tracking device; and*

*informing the user of the location of the tracking device.*

64.     For example, on information and belief, the Uber Platform performs a computer implemented method of responding to a problem/condition (e.g., a ride request reflecting a passenger in need of transportation). Uber controls this implementation for its benefit and such implementation benefits the drivers and riders. Defendant has been and is engaged in direct infringing activities because all steps of the claimed methods are performed by the software and/or network of the Uber Platform and Defendant is the entity that owns or controls and operates such

network. Defendant has used, and continues to use, the accused methods for development, testing, and/or training purposes.

65.     On information and belief, when an Uber driver logs onto the Uber Platform, the positioning apparatus in the driver's smartphone is activated, thereby sending the location of the driver's smartphone to the Uber Platform. Uber associates a driver's smartphone with an Uber driver using an authentication procedure.

66.     On information and belief, the Uber Platform receives a location request from a customer when the customer opens the Uber Rider Application and seeks the location of the proposed Uber driver's car, and the Uber Platform transmits a signal to the Uber driver's smartphone, thereby providing confirmation of the driver's location as well as the location of a potential customer by sending a request for a ride to the Uber driver.

67.     On information and belief, the Uber driver activates a GPS system in the driver's smartphone when the smartphone is on and the Uber Driver Application is opened, and Uber uses GPS to locate drivers. Further, the Uber driver's smartphone communicates and sends position information, in addition to GPS information, over a mobile network using multiple cell towers. Location of the driver's smartphone is determined by GPS by comparing measurements from two or more GPS satellites to the smartphone, and between the GPS satellites and the earth.

68.     On information and belief, the Uber driver's smartphone calculates location data even when line-of-sight between the Uber driver's smartphone and GPS satellites are impaired, such as by being indoors, in a parking structure, dense forest or by heavy rain or snow. The Uber driver's smartphone transmits its location data to the Uber Platform, and the Uber Platform informs the Uber customer of the Uber driver's location.

69.     Defendant has induced, and continues to induce, the infringing acts of the drivers and riders by engaging in these activities and continuing to encourage and instruct the drivers and riders to use the accused Uber Platform and perform steps of the claimed methods with knowledge of the '724 Patent by at least the time of this Complaint in this action, and with the actual intent to cause the acts which it knew or should have known would induce direct infringement and/or willful blindness of a high probability of infringement.

70.     As a result of Defendant's infringement of the '724 Patent, Plaintiff has suffered monetary damages in an amount yet to be determined and will continue to suffer damages in the future. Defendant is liable to Plaintiff for such damages, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

71.      Defendant's wrongful acts have damaged and will continue to damage Plaintiff irreparably, and Plaintiff has no adequate remedy at law for those wrongs and injuries. In addition to its actual damages, Plaintiff is entitled to a permanent injunction that restrains and enjoins Defendant and its agents, servants, and employees, and all persons acting thereunder, in concert with, or on its behalf, from infringing the '724 Patent.

## COUNT II

## INFRINGEMENT OF THE '855 PATENT

72.     Plaintiff repeats and realleges the above paragraphs, which are incorporated by reference as if fully restated herein.

73.     Plaintiff is the owner of all rights, title, and interest in the '855 Patent and, at a minimum, all substantial rights in the '855 Patent, including the exclusive right to enforce the patent and all rights to pursue damages, injunctive relief, and all other available remedies for past, current, and future infringement.

74.     Plaintiff and its predecessors in interest have never licensed the Defendant under the '855 Patent, nor has Plaintiff otherwise authorized Defendant to practice any part of the '855 Patent.

75.     The '855 Patent is presumed valid under 35 U.S.C. § 282.

76.     Defendant, alone and/or jointly in conjunction with agents or parties under its control, has directly and/or indirectly infringed and continues to directly and/or indirectly infringe the '855 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by using computerized methods for coordinating, controlling, and providing ride-hailing and food delivery services that are covered by one or more claims of the '855 Patent, including Claim 11 of the '855 Patent, without license or authority.

77.     The infringing activities utilize applications operated or licensed by Defendant that can be used on a variety of remote computing devices and gather and transmit location-specific information.

78.     These activities infringe at least Claim 11 of the '855 Patent.

79.     By way of example, Claim 11 of the '855 Patent recites:

> *11. A method of determining location via a tracking device associated with an individual or an object to be located, the method comprising:*
>
> *receiving a location request from a user;*
>
> *activating a positioning apparatus associated with the tracking device;*
>
> *transmitting to the tracking device:*
>
> > *(i) a first signal from a monitoring station;*
> >
> > *(ii) a second signal from a wireless location and tracking system;*
> >
> > *(iii) a third signal from a mobile transceiver; and*
> >
> > *(iv) a fourth signal from an adjacent tracking device;*

*determining which of the first signal, the second signal, the third signal, and the fourth signal match defined selection criteria stored in the tracking device;*

*determining location data in part based on a signal selected utilizing the defined selection criteria;*

*transmitting the location data to the monitoring station for analysis to determine a location of the tracking device; and*

*informing the user of the location of the tracking device on a map.*

80.     For example, on information and belief, when an Uber customer/user opens the Uber Rider Application on a smartphone and inputs a command to request a ride, the Uber system receives a location request from the user.

81.     On information and belief, when the Uber driver's smartphone is turned on, the driver automatically activates a positioning apparatus associated with the smartphone. When the Uber driver opens the Uber Driver Application on the smartphone, the Uber system automatically sees that the driver is available for a ride.

82.     On information and belief, the Uber driver's smartphone receives a signal from the Uber Platform when it provides confirmation of the driver's location as well as the location of a potential customer when it sends a request for a ride to the Uber driver. Further, the Uber driver's smartphone receives a signal from a GPS satellite system.

83.     On information and belief, the Uber driver's smartphone also receives signals from multiple cell towers that have been pinged by the Uber driver's smartphone by the driver using the Uber Driver Application to initiate communication to which cell towers respond.

84.     On information and belief, the Uber driver's smartphone determines its location at least in part by utilizing a GPS satellite signal and/or cell tower signal(s). The Uber driver's smartphone transmits its location data to the Uber Platform for analysis in determining the location of the Uber driver's smartphone.  The Uber Platform informs the Uber customer of the

location of the Uber driver's smartphone on the digital map depicted on the open Uber Rider Application on the customer's smartphone.

85.    Defendant has induced, and continues to induce, the infringing acts of the drivers and riders by engaging in these activities and continuing to encourage and instruct the drivers and riders to use the accused Uber Platform and perform steps of the claimed methods with knowledge of the '855 Patent by at least the time of this Complaint in this action, and with the actual intent to cause the acts which it knew or should have known would induce direct infringement and/or willful blindness of a high probability of infringement.

86.    As a result of Defendant's infringement of the '855 Patent, Plaintiff has suffered monetary damages in an amount yet to be determined and will continue to suffer damages in the future. Defendant is liable to Plaintiff for such damages, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

87.    Defendant's wrongful acts have damaged and will continue to damage Plaintiff irreparably, and Plaintiff has no adequate remedy at law for those wrongs and injuries. In addition to its actual damages, Plaintiff is entitled to a permanent injunction restraining and enjoining Defendant and its agents, servants, and employees, and all persons acting thereunder, in concert with, or on its behalf, from infringing at least Claim 11 of the '855 Patent.

## COUNT III

## INFRINGEMENT OF THE '289 PATENT

88.    Plaintiff repeats and realleges the above paragraphs, which are incorporated by reference as if fully restated herein.

89.    Plaintiff is the owner of all rights, title, and interest in the '289 Patent and, at a minimum, all substantial rights in the '289 Patent, including the exclusive right to enforce the

patent and all rights to pursue damages, injunctive relief, and all other available remedies for past, current, and future infringement.

90.     Plaintiff and its predecessors in interest have never licensed the Defendant under the '289 Patent, nor has Plaintiff otherwise authorized Defendant to practice any part of the '289 Patent.

91.     The '289 Patent is presumed valid under 35 U.S.C. § 282.

92.     On information and belief, Defendant operates, provides, and controls systems that coordinate ride-hailing and food delivery services using passenger/customer and driver applications that distribute information via Defendant's system to the operator of a vehicle.

93.     Defendant, alone and/or in conjunction with agents or other parties under its control, has directly and/or indirectly infringed and continues to directly and/or indirectly infringe the '289 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, and using systems related services for coordinating, controlling, and providing ride-hailing and food delivery services that are covered by one or more claims of the '289 Patent, including Claim 8 of the '289 Patent, without license or authority.

94.     The infringing activities utilize applications operated or licensed by Defendant that can be used on a variety of remote computing devices and gather and transmit location-specific information.

95.     These activities infringe at least Claim 8 of the '289 Patent.

96.     By way of example, Claim 8 of the '289 Patent recites:

*A system comprising:*

*a first tracking device having a first transceiver configured [i] to receive a first request signal from a remote user terminal, and [ii] to transmit a first reply signal that comprises a first identification code; and*

*a second tracking device having a second transceiver that is configured to:*

*(i) receive the first reply signal;*

*(ii) compare the first identification code to a stored identification code;*

*(iii) determine location coordinates of the first tracking device; and*

*communicate a second reply signal that comprises the location coordinates to a monitoring station connected to the user terminal in part responsive to verification of the first identification code.*

97.     For example, on information and belief, the Uber Platform is a system for matching customers and drivers. Uber maintains a database of drivers who want to provide ride services and also of people who want to use ride services. The Uber database is connected to both Uber customers and Uber drivers and thus is able to match the Uber customers' requirements with ride services.

98.     On information and belief, the Uber Platform utilizes a first tracking device, namely an Uber driver's smartphone. A smartphone contains a transceiver. Because the Uber driver's smartphone is used in the context of providing services via Uber, the driver's smartphone is part of a system under the control of Uber. The Uber driver's smartphone is configured to receive a first request signal, namely, the signal sent from the customer's smartphone requesting a ride. The user's Uber Rider Application includes a user interface that operates as a remote user terminal that transmits the request signal. The request signal is transmitted to the driver's smartphone through the Uber Platform. The Uber driver's smartphone is further configured to transmit a first reply signal, namely, the signal accepting the ride request. The reply signal comprises the driver's identification information.

99.     On information and belief, the Uber Platform also comprises a second tracking device which transmits and receives signals and thus contains at least one transceiver that is the second transceiver. Further, the Uber Platform is configured to receive the first reply signal from the Uber driver's smartphone.

100.    On information and belief, the Uber Platform compares the identification information sent by the driver with the identification information regarding the driver that is listed in the Uber system. Further, the Uber Platform's authentication system determines whether there is a verification of the driver's identification information contained in the driver's signal and that it is contained in the system. If there is a verification, the Uber Platform then transmits a signal which comprises location information of the first tracking device to the user's smartphone.

101.    Defendant has induced, and continues to induce, the infringing acts of the drivers and riders by engaging in these activities and continuing to encourage and instruct the drivers and riders to use the accused Uber Platform and perform steps of the claimed methods with knowledge of the '289 Patent by at least the time of this Complaint in this action, and with the actual intent to cause the acts which it knew or should have known would induce direct infringement and/or willful blindness of a high probability of infringement.

102.    As a result of Defendant's infringement of the '289 Patent, Plaintiff has suffered monetary damages in an amount yet to be determined and will continue to suffer damages in the future. Defendant is liable to Plaintiff for such damages, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

103.    Defendant's wrongful acts have damaged and will continue to damage Plaintiff irreparably, and Plaintiff has no adequate remedy at law for those wrongs and injuries. In addition to its actual damages, Plaintiff is entitled to a permanent injunction restraining and enjoining Defendant and its agents, servants, and employees, and all persons acting thereunder, in concert with, or on its behalf, from infringing at least Claim 8 of the '289 Patent.

## COUNT IV

## INFRINGEMENT OF THE '355 PATENT

104.    Plaintiff repeats and realleges the above paragraphs, which are incorporated by reference as if fully restated herein.

105.    Plaintiff is the owner of all rights, title, and interest in the '355 Patent and, at a minimum, all substantial rights in the '355 Patent, including the exclusive right to enforce the patent and all rights to pursue damages, injunctive relief, and all other available remedies for past, current, and future infringement.

106.    Plaintiff and its predecessors in interest have never licensed the Defendant under the '355 Patent, nor has Plaintiff otherwise authorized Defendant to practice any part of the '355 Patent.

107.    The '355 Patent is presumed valid under 35 U.S.C. § 282.

108.    On information and belief, Defendant operates, provides, and controls systems and methods that coordinate ride-hailing and food delivery services using passenger/customer and driver applications that collect current location and destination locations used by Uber to execute functions in support of a proximity-driven activity.

109.    On information and belief, Defendant, alone and/or in conjunction with agents or parties under its control, has directly and/or indirectly infringed and continues to directly and/or indirectly infringe the '355 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, and using systems, methods, and computer program products and related services for coordinating, controlling, and providing ride-hailing services that are covered by one or more claims of the '355 Patent, including Claim 1 of the '355 Patent without license or authority.

110.    The infringing activities utilize applications operated or licensed by Defendant that can be used on a variety of remote computing devices and gather and transmit location-specific information.

111.    These activities infringe at least Claim 1 of the '355 Patent.

112.    By way of example, method Claim 1 of the '355 Patent recites:

*1. A method to provide location information on a webpage for a user in a personalized user format comprising:*

*providing user access to a location management dashboard module in response to detection of a successful user logon, the location management dashboard module comprising a listing of one or more groups of tracking devices the user is capable of monitoring;*

*providing a graphical mapping module comprising menu options in the personalized user format, the menu options comprising one or more tile mapping controls as part of a wizard menu enabling the user to reposition graphical mapping tiles for the one or more groups of tracking devices from multiple mapping service providers, the graphical mapping tiles initially requested by the user on at least one tracking device of the listing of one or more groups of tracking devices, whereby the user repositions the graphical mapping tiles received as part of the initial request without reaccessing the websites of the mapping service providers;*

*providing an alert message associated with the at least one tracking device in response to detection of the successful user login;*

*providing a request signal to obtain location coordinates of the at least one tracking device of the listing of one or more groups of tracking devices;*

*providing by the at least one tracking device a first reply signal that comprises a first identification code to identify the at least one tracking device; and*

*displaying the location coordinates of the at least one tracking device to the user in response to the request signal.*

113.    For example, on information and belief, Uber provides location information to Uber customers on a webpage via the Uber Rider Application in a personalized format. Uber provides graphical online information via a smartphone app, which qualifies as either a literal or equivalent of a "webpage," because it pulls content and data from the Internet in the same manner as a

traditional webpage. Uber's map display is similar to the "webpage" shown in Figure 18 of the '355 Patent:



114.    On information and belief, Uber also provides the information "in a personalized format." The specification of the '355 Patent explains that "the system generates a personalized user profile to organize, control, and store location of one or more tracking devices associated with one or more groups of objects or individuals. The personalized user profile may include one or more user selectable icons (or upload picture (e.g., JPEG or GIF)) icons to monitor on a map display." '355 Patent, col. 8, lines 24-30. Likewise, creating an Uber account requires a customer to input personal settings such as "a valid email address and phone number," as well as "first and last name, phone number, and preferred language," and "payment information."

115.    On information and belief, the Uber Rider Application also provides access to a location management dashboard (map screen) after the Uber customer (user) has logged on. Once the Uber Rider Application is installed on the customer's smartphone, the customer logs on by opening the application. When the customer logs on, the application displays a screen (location management dashboard module) containing a map with the customer's approximate location.

116.     Further, on information and belief, an Uber customer is able to request a ride by allowing the Uber Rider Application to find the user's location via GPS, choosing a desired car type using interactive menu features, and tapping "Request" in the application.

117.     On information and belief, the map on the Uber Rider Application provides a listing of Uber drivers' smartphones (tracking devices) that the Uber customer (user) can monitor.

118.     The drivers' smartphones constitute "tracking devices," at least because they contain transceivers, and the '355 Patent broadly describes "tracking device" as "any integrated circuit (IC), chip, chip set, system-on-a-chip, microwave integrated circuit (MIC), Monolithic Microwave Integrated Circuit (MMIC), low noise amplifier, power amplifier, transceiver, receiver, transmitter and Application Specific Integrated Circuit (ASIC) that may be constructed and/or fabricated." '355 Patent, col. 7, lines 3-9.

119.     Moreover, the display of the cars constitutes a "listing" at least because it provides a selection of tracking devices. Further, once the user makes a ride request and is matched with a driver, the driver's car and location are displayed, which is a listing of "one or more groups of tracking devices the user is capable of monitoring." '355 Patent, col. 24, lines 19-20.

120.     The Uber Rider Application provides a graphical mapping module with menu options. The graphical mapping module is the digital map that appears on the customer's smartphone via the application.

121.     On information and belief, the Uber Rider Application overlays icons on the map such as the customer and the driver in order to provide a visual depiction of the driver's proximity. Further, on information and belief, the customer repositions the tiles in selecting among the various Uber cars (Uber X, Uber black, etc.) offered by the Uber application.

122.    The Uber Rider Application also allows the customer to zoom in and out of the map in reviewing the location of the Uber driver (tracking device). After such maneuvering, the graphical mapping tiles will reposition themselves and resume their initial state.

123.    On information and belief, the Uber Rider Application also has tile mapping controls that enable the Uber customer (user) to reposition tiles for the benefit of the Uber driver (tracking device). The Uber Rider Application interface constitutes a "wizard menu" that allows the user to input user information and reposition the map tiles.

124.    On information and belief, the graphical mapping tiles displayed on the Uber Rider Application regarding the Uber driver (tracking device) are the initial mapping tiles. Uber uses various third-party and internal map software applications to provide the visual representation. There is no need to re-access any mapping service website when the user repositions the graphical mapping tiles. For example, on information and belief, Uber uses Bing maps as one of its software applications. Accordingly, Uber pre-loads the map information to allow the user to reposition the tiles without re-accessing the website to provide newly-rendered tiles.

125.    Once the Uber customer (user) has logged in by opening the Uber Rider Application and either automatically or manually logging in, the application provides an alert message such as "Set Pickup Location," "Enter pickup point," or "Where to?"

126.    On information and belief, the Uber Rider Application sends a request signal to obtain the location coordinates of the Uber driver when the pickup location is set. The Uber driver's smartphone sends a reply signal to the Uber Platform when the driver has accepted the customer's ride request. The reply signal includes the Uber driver's identification information, such as the IP address of the driver's smartphone. As a condition of providing Users with

transportation, delivery, or other services via the Uber Platform, drivers are required to provide their precise location data to Uber via the Driver Application.

127.    On information and belief, once the Uber driver has accepted the ride request, the Uber Rider Application on the customer's smartphone displays the location coordinates of the Uber driver's smartphone on the map display.

128.    Defendant has induced, and continues to induce, the infringing acts of the drivers and riders by engaging in these activities and continuing to encourage and instruct the drivers and riders to use the accused Uber Platform and perform steps of the claimed methods with knowledge of the '355 Patent by at least the time of this Complaint in this action, and with the actual intent to cause the acts which it knew or should have known would induce direct infringement and/or willful blindness of a high probability of infringement.

129.    As a result of Defendant's infringement of the '355 Patent, Plaintiff has suffered monetary damages in an amount yet to be determined and will continue to suffer damages in the future. Defendant is liable to Plaintiff for such damages, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

130.    Defendant's wrongful acts have damaged and will continue to damage Plaintiff irreparably, and Plaintiff has no adequate remedy at law for those wrongs and injuries. In addition to its actual damages, Plaintiff is entitled to a permanent injunction restraining and enjoining Defendant and its agents, servants, and employees, and all persons acting thereunder, in concert with, or on its behalf, from infringing at least Claim 1 of the '355 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter:

A.      A judgment in favor of Plaintiff that Defendant has been and is infringing the '724 Patent; the '855 Patent; the '289 Patent; and the '355 Patent pursuant to 35 U.S.C. §§ 271(a) and/or 271(b);

B.      A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert or privity with any of them from infringing and/or inducing the infringement of any claims of the '724 Patent; any claims of the '855 Patent; any claims of the '289 Patent; and any claims of the '355 Patent, with any additional compensation before imposition of such injunction to Plaintiff in an amount to be determined by the Court;

C.      A judgment awarding Plaintiff all damages adequate to compensate it for Defendant's infringement of the Asserted Patents under 35 U.S.C. § 284, and in no event less than a reasonable royalty for Defendant's acts of infringement, including all prejudgment and post-judgment interest at the maximum rate permitted by law, and also any past damages permitted under 35 U.S.C. § 286, as a result of Defendant's infringement of any claims of any of the Asserted Patents;

D.      A compulsory royalty going forward after trial and/or entry of final judgment if an injunction is not granted;

E.      An accounting for all damages including damages between trial and entry of final judgment;

F.      An assessment of costs, including reasonable attorneys' fees pursuant to 35 U.S.C.

§ 285, and prejudgment interest against Defendant; and

G.      Such other and further relief as this Court may deem just and proper.


**<u>JURY TRIAL DEMANDED</u>**


Pursuant to FED. R. CIV. P. 38, Plaintiff hereby demands a trial by jury on all issues so

triable.


Dated: November 19, 2021                           Respectfully submitted,

                                                   By: /s/ Bruce J. Rose


Matthew W. Howell (*pro hac vice to be filed*)*    Theodore Stevenson, III (TX 19196650)
mathew.howell@alston.com                           ted.stevenson@alston.com
Pamela Holland Councill (*pro hac vice to be filed*)*  Michael J. Newton (TX 24003844)
pamela.councill@alston.com                         mike.newton@alston.com
ALSTON & BIRD, LLP                                 ALSTON & BIRD, LLP
One Atlantic Center                                Chase Tower
1201 West Peachtree Street, Suite 4900             2200 Ross Avenue, Suite 2300
Atlanta, GA 30309                                  Dallas, TX 75201
Telephone: (404) 881-7000                          Telephone: (214) 922-3400
Facsimile: (404) 881-7777                          Facsimile: (214) 922-3899

                                                   Bruce J. Rose (NC 20105)
                                                   bruce.rose@alston.com
                                                   ALSTON & BIRD, LLP
                                                   101 South Tryon Street, Suite 4000
                                                   Charlotte, North Carolina 28280
                                                   Telephone: (704) 444-1000
                                                   Facsimile: (704) 444-1736


                                                   *Attorneys for Plaintiff*
                                                   *LBT IP II LLC*

                                                   *Not admitted in Texas

33