**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| LBT IP II LLC,<br><br>                    Plaintiff,<br><br>         v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>                    Defendant. | Case No. 6:21-cv-01210-ADA<br><br>**JURY TRIAL DEMANDED** |

**UBER TECHNOLOGIES, INC.'S**
**MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................................ 2

    A.    The '724 Patent ......................................................................................... 2

    B.    The '855 Patent ......................................................................................... 3

    C.    The '289 Patent ......................................................................................... 3

    D.    The '355 Patent ......................................................................................... 4

III.  LEGAL STANDARDS ......................................................................................... 5

IV.   ARGUMENT ......................................................................................................... 6

    A.    LBT's Direct Infringement Claims Should Be Dismissed ......................... 6

        1.    LBT Fails to Plead the "Who" and the "How" for Each Recited
           Step in the '724, '855, and '289 Patents ....................................... 6

        2.    LBT Fails to Allege Direction or Control Required to Show "Joint"
           Infringement ................................................................................. 12

    B.    LBT's Induced Infringement Claims Should Be Dismissed ..................... 14

        1.    LBT Fails to Plead Pre-Suit Knowledge ....................................... 14

        2.    LBT Fails to Adequately Plead Underlying Acts of Direct
           Infringement ................................................................................. 15

V.    CONCLUSION .................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
    620 F. App'x 934 (Fed. Cir. 2015) .......................................................... 15

*Affinity Labs Tex., LLC v. Blackberry Ltd.*,
    No. 13-CV-362, 2014 WL 12551207 (W.D. Tex. Apr. 30, 2014) ...................................... 6, 15

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) .............................................................. 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................ 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................ 5, 14

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) .............................................................. 5, 11

*Castlemorton Wireless, LLC v. Bose Corp.*,
    No. 20-cv-00029-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020) .................................. 6

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l*,
    631 F.3d 1279 (Fed. Cir. 2011) ............................................................. 6, 11

*Chapterhouse, LLC v. Shopify, Inc.*,
    No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) .............................. 9

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015) ..................................................................... 6, 14

*De La Vega v. Microsoft Corp.*,
    No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) .................... 7, 8, 12

*DSU Med. Corp. v. JMS Co., Ltd.*,
    471 F.3d 1293 (Fed. Cir. 2006) ............................................................. 16

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004) ............................................................. 15

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ........................................................................ 5, 14

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) ............................................................. 5, 6, 16

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
    870 F.3d 1320 (Fed. Cir. 2017) ............................................................. 15

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017) ............................................................. 14

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. 915 (2014) ........................................................................ 5

**TABLE OF AUTHORITIES**

*(continued)*

**Page(s)**

*Linear Tech. Corp. v. Impala Linear Corp.*,
   379 F.3d 1311 (Fed. Cir. 2004) ............................................................. 16

*Lyda v. CBS Corp.*,
   838 F.3d 1331 (Fed. Cir. 2016) ....................................................... 10, 12

*M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) ................................................................. 7

*Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*,
   No. 4:19-CV-876-SDJ, 2020 WL 6781566 (E.D. Tex. Nov. 17, 2020) ................................. 16

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
   No. 2:15-cv-1955-JRG, 2016 WL 3542430 (E.D. Tex. 2016) ............................ 13

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
   No. 5:19-CV-243-H, 2021 WL 3030066 (N.D. Tex. July 2, 2021) ......................... 9

**Statutes**

35 U.S.C. § 271(a) ....................................................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................. 5

## I.      **INTRODUCTION**

In 2019, the Irvine, California-based company, Location Based Technologies, Inc., sold its patent portfolio to LBT IP LLC, a then newly created entity owned by Secured Creditors Group.  At the same time, the two companies—Location Based Technologies, Inc. and LBT IP LLC—entered into a cash flow sharing agreement whereby each company was to receive a share of all net cash flows received from monetization of the patent portfolio—including from litigation.  Soon thereafter, LBT IP LLC created offshoot entities—LBT IP I LLC and LBT IP II LLC—and seemingly assigned portions of LBT IP LLC's newly acquired patent portfolio to each.  The latter offshoot, LBT IP II LLC, purports to be the owner of the four patents asserted against Uber here in this case.  And while LBT IP II attempts to shoehorn Uber's modern transportation marketplace that facilitates transactions involving riders and drivers into Location Based Technologies, Inc.'s antiquated location determination patent claims, LBT IP II takes a number of significant missteps in its pleadings—starting with a fundamental misunderstanding of the innovative technology unique to Uber and its multi-party marketplace (including Uber, the rider and the driver).  LBT IP II ignores Uber's actual technology and the multiple independent, principal components in favor of its own nebulous concoction of hardware, software, drivers, communications and "electric connections"—which LBT IP II has named the "Uber Platform." LBT IP II's reliance on the "Uber Platform" as the centerpiece of its infringement allegations is just one in a series of missteps, not one of which can be overcome by amendment.  And taken together, these insurmountable significant missteps are fatal to LBT IP II's entire case.

First, LBT IP II ("LBT") alleges direct infringement of one patent claim from each of the four asserted patents yet for three of the asserted patents, LBT fails to identify "who" infringes each of the claim elements and neglects to include factual allegations that explain "how" Uber (or any other party) performs one or more steps.  Second, LBT alleges joint infringement based

on a "smartphone" but fails to allege requisite direction or control.  Finally, LBT alleges indirect infringement but, for all four asserted patents, fails to plead pre-suit knowledge, fails to adequately plead underlying acts of direct infringement, and fails to identify "who" performs every step.  Not one of these defects can be cured by amending LBT's complaint.

    For these reasons, LBT's complaint should be dismissed with prejudice in its entirety.

## II.    FACTUAL BACKGROUND

    On November 19, 2021, LBT filed a complaint against Uber Technologies, Inc. ("Uber"), alleging infringement of U.S. Patent Nos. 7,728,724 (the "'724 Patent"), 7,598,855 (the "'855 Patent"), 8,531,289 (the "'289 Patent") and 8,224,355 (the "'355 Patent") (collectively, the "Asserted Patents").  Compl. ¶ 2.  The '724, '855 and '289 Patents are from the same patent family.  The '355 Patent is part of an unrelated patent family.  LBT alleges that Uber's "ride-hailing and food delivery services" technologies directly and indirectly infringe the Asserted Patents "alone and/or jointly" through use of an "Uber Platform."[1]  *See, e.g.*, Compl. ¶¶ 23-24.

### A.    The '724 Patent

    LBT asserts infringement of independent Claim 13 of the '724 Patent.  Claim 13, a method claim, is recited below.

>    13.    A method for locating an individual or an object, comprising:
>
>        associating a tracking device with the individual or the object to be located;
>        receiving a location request from a user;
>        transmitting a signal from a monitoring station to the tracking device;
>        activating a global positioning system circuit within the tracking device;
>        communicating a reference signal to triangulate location information utilizing a first transmitter/receiver station and a second transmitter/receiver station;
>        receiving a global positioning system signal, a first transmitter/receiver station signal,

---

[1] According to LBT, the "Uber Platform" "encompasses all such hardware, applications, and functionalities and any related Uber technologies that interface with the Uber Driver and Rider Applications to provide ride-hailing and food delivery services."  Compl. ¶ 24.

and a second transmitter/receiver station signal;

calculating location data responsive to the global positioning system signal, the first transmitter/receiver station signal, the second transmitter/receiver station signal, and the reference signal without line-of-sight between a global positioning system satellite and the tracked device;

calculating the location data of the tracking device resulting from a comparison of measurements from gps satellites to the tracking device, measurements of distances between two or more gps satellites, and measurements of relative orientations of the two or more gps satellites, the tracking device, and earth;

transmitting the location data to the monitoring station to determine location of the tracking device; and

informing the user of the location of the tracking device.

**B.     The '855 Patent**

LBT asserts infringement of independent Claim 11 of the '855 Patent.  Claim 11, a

method claim, is recited below.

11.  A method of determining location via a tracking device associated with an individual or an object to be located, the method comprising:

receiving a location request from a user;

activating a positioning apparatus associated with the tracking device;

transmitting to the tracking device:

(i) a first signal from a monitoring station;

(ii) a second signal from a wireless location and tracking system;

(iii) a third signal from a mobile transceiver; and

(iv) a fourth signal from an adjacent tracking device;

determining which of the first signal, the second signal, the third signal, and the fourth signal match defined selection criteria stored in the tracking device;

determining location data in part based on a signal selected utilizing the defined selection criteria;

transmitting the location data to the monitoring station for analysis to determine a location of the tracking device; and

informing the user of the location of the tracking device on a map.

**C.     The '289 Patent**

LBT asserts infringement of independent Claim 8 of the '289 Patent.  Claim 8, a system

claim, is recited below.

8.  A system comprising:

>a first tracking device having a first transceiver configured to receive a first request signal from a remote user terminal, and to transmit a first reply signal that comprises a first identification code; and

>a second tracking device having a second transceiver that is configured to:

>(i) receive the first reply signal;

>(ii) compare the first identification code to a stored identification code;

>(iii) determine location coordinates of the first tracking device; and

>(iv) communicate a second reply signal that comprises the location coordinates to a monitoring station connected to the user terminal in part responsive to verification of the first identification code.

### D.   The '355 Patent

LBT asserts infringement of independent Claim 1 of the '355 Patent.  Claim 1, a method claim, is recited below.

1.  A method to provide location information on a webpage for a user in a personalized user format comprising:

>providing user access to a location management dashboard module in response to detection of a successful user logon, the location management dashboard module comprising a listing of one or more groups of tracking devices the user is capable of monitoring;

>providing a graphical mapping module comprising menu options in the personalized user format, the menu options comprising one or more tile mapping controls as part of a wizard menu enabling the user to reposition graphical mapping tiles for the one or more groups of tracking devices from multiple mapping service providers, the graphical mapping tiles initially requested by the user on at least one tracking device of the listing of one or more groups of tracking devices, whereby the user repositions the graphical mapping tiles received as part of the initial request without re-accessing the websites of the mapping service providers;

>providing an alert message associated with the at least one tracking device in response to detection of the successful user login;

>providing a request signal to obtain location coordinates of the at least one tracking device of the listing of one or more groups of tracking devices;

>providing by the at least one tracking device a first reply signal that comprises a first identification code to identify the at least one tracking device; and

>displaying the location coordinates of the at least one tracking device to the user in response to the request signal.

### III.   <u>LEGAL STANDARDS</u>

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6).  The plausibility standard is not met unless "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal*/*Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements.  There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).

Induced infringement claims must also state a plausible claim under *Twombly/Iqbal*.  *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323 (Fed. Cir. 2012).  Such allegations must include allegations of fact that, if true, would establish direct infringement of at least one claim of each patent for which indirect infringement is alleged.  *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("[O]ur case law leaves no doubt that inducement liability may arise if, but only if [there is] . . . direct infringement.").  The complaint must further allege facts showing "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

Additionally, "liability for inducing patent infringement attaches only if the defendant knew of the patent and that 'the induced acts constitute patent infringement.'" *Castlemorton Wireless, LLC v. Bose Corp.*, No. 20-cv-00029-ADA, 2020 WL 6578418, at *5 (W.D. Tex. July

22, 2020) (quoting *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015)).  And "a claim of induced infringement 'must contain facts plausibly showing that the defendants specifically intended their customers to infringe the asserted patent and knew that the customer's acts constituted infringement.'"  *Affinity Labs of Tex., LLC v. Blackberry Ltd.*, No. 13-CV-362, 2014 WL 12551207, at *3 (W.D. Tex. Apr. 30, 2014) (quoting *In re Bill of Lading*, 681 F.3d at 1339).

IV.  <u>ARGUMENT</u>

LBT's complaint fails to plausibly plead any cause of action because, as explained below, its allegations of direct and indirect infringement fail to meet the minimum pleading requirements set forth in *Twombly* and *Iqbal*.

A.  <u>LBT's Direct Infringement Claims Should Be Dismissed</u>

1.  <u>LBT Fails to Plead the "Who" and the "How" for Each Recited Step in the '724, '855, and '289 Patents</u>

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271(a).  LBT fails to include factual allegations that explain "who" performs each recited step, and "how" each step is performed by Uber (or any other party).  For method claims, "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity."  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc).  For systems claims, a defendant must "put the claimed invention into service, i.e., control the system and obtain benefit from it" to use the patented system, or must "combine all of the claim elements" to make the patented system.  *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l*, 631 F.3d 1279, 1286, 1288 (Fed. Cir. 2011).  "[M]ere recitation of claim elements and corresponding

conclusions, without supporting factual allegations, is insufficient to satisfy the *Iqbal/Twombly* standard." *Bot M8 LLC,* 4 F.4th at 1355.  "[E]ither repleading or dismissal is necessary" when a complaint is "silent how [the defendant] could have directly infringed" asserted claims.  *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *5 (W.D. Tex. Feb. 11, 2020).

**'724 Patent:**  LBT does not identify any accused "reference signal," "a first transmitter/receiver station," or "a second transmitter/receiver station" all of which are required to perform the steps "communicating a ***reference signal*** to triangulate location information utilizing a ***first transmitter/receiver station*** and a ***second transmitter/receiver station***"; "receiving a global positioning system signal, a ***first transmitter/receiver station*** signal, and a ***second transmitter/receiver station*** signal"; and "calculating location data responsive to the global positioning system signal, the ***first transmitter/receiver station*** signal, the ***second transmitter/receiver station*** signal, and the ***reference signal*** without line-of-sight between a global positioning system satellite and the tracked device" in asserted claim 13.  Further, the complaint is completely silent as to triangulating location information—failing to identify "who" performs the triangulation step and "how"—or whether location information is triangulated at all.  *See generally* Compl. ¶¶ 64-68.

Instead, LBT asserts, without explanation, that the steps "communicating a reference signal to triangulate location information utilizing a first transmitter/receiver station and a second transmitter/receiver station"; "receiving a global positioning system signal, a first transmitter/receiver station signal, and a second transmitter/receiver station signal"; and "calculating location data responsive to the global positioning system signal, the first transmitter/receiver station signal, the second transmitter/receiver station signal, and the reference signal without line-of-sight between a global positioning system satellite and the

tracked device" are "directly" infringed by "Uber" because "the Uber driver's smartphone communicates and sends position information, in addition to GPS information, over a mobile network using multiple cell towers" and because "[l]ocation of the driver's smartphone is determined by GPS by comparing measurements from two or more GPS satellites to the smartphone, and between the GPS satellites and the earth." *See* Compl. ¶ 67.  And, far from identifying an accused "reference signal," "a first transmitter/receiver station," or "a second transmitter/receiver station," and even purporting to allege that Uber (or anyone else) triangulates location information, LBT's pleading doesn't even bother to recite the asserted claim element "communicating a reference signal to triangulate location information utilizing a first transmitter/receiver station and a second transmitter/receiver station", let alone meet the minimum pleading requirements of *Twombly/Iqbal*.  Because the complaint fails to include even a short written description of how Uber (or any other party) allegedly performs the "communicating a reference signal to triangulate location information utilizing a first transmitter/receiver station and a second transmitter/receiver station"; "receiving a global positioning system signal, a first transmitter/receiver station signal, and a second transmitter/receiver station signal"; and "calculating location data responsive to the global positioning system signal, the first transmitter/receiver station signal, the second transmitter/receiver station signal, and the reference signal without line-of-sight between a global positioning system satellite and the tracked device" steps, the complaint fails to state a claim upon which relief can be granted.  *See De La Vega*, 2020 WL 3528411, at *6 (finding that "[p]laintiff only presented three screenshots of evidence without explaining how that evidence shows that Google (and/or a third-party) performs the 'coupling' step" and holding that "[b]ecause Plaintiff does not include even a short written description of how the accused instrumentalities meet the 'coupling' limitation, his complaint fails to state a claim upon which

8

relief can be granted"). For these reasons, LBT's allegations of infringement of the '724 Patent should be dismissed.

**'855 Patent:** Asserted claim 11 in the '855 Patent requires "***transmitting*** to the tracking device . . . a ***fourth signal*** from an ***adjacent tracking device***." Yet LBT fails to identify an accused "fourth signal" or "adjacent tracking device" or explain "who" allegedly transmits a "fourth signal" from an "adjacent tracking device" or allege whether (and if so, "how") the required step is performed at all. Compl. ¶ 84. Likewise, for the required step of "***determining*** which of the first signal, the second signal, the third signal, and the ***fourth signal*** match defined selection criteria stored in the tracking device" LBT fails to plead whether this step is performed at all, let alone explain "who" performs it and "how." *See generally id*. ¶¶ 80-84.

Instead, and again without explanation, LBT baldly alleges that these required steps of the asserted claim are "directly" infringed by "Uber" because "the Uber driver's smartphone also receives signals from multiple cell towers that have been pinged by the Uber driver's smartphone by the driver using the Uber Driver Application to initiate communication to which cell towers respond." *Id*. ¶ 83. Yet, as with the '724 Patent, LBT's pleadings fall far short of even restating the claim elements—in fact, LBT fails to plead the "determining which of the first signal, the second signal, the third signal, and the fourth signal match defined selection criteria stored in the tracking device" claim element *at all*—let alone the "who" and the "how." Other courts in the Fifth Circuit, when considering more factual allegations of infringement than are presented here, have found a plaintiff's failure to plead "how" a defendant infringed each claim element violated the minimum pleading requirements of *Twombly/Iqbal*. *See, e.g., Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018); *see also Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, No. 5:19-CV-243-H, 2021 WL 3030066, at *6 (N.D. Tex. July 2, 2021).

For these reasons, LBT's allegations of infringement of the '855 Patent should be dismissed.

**'289 Patent**[2]:  Finally, asserted claim 8 of the '289 Patent requires "a ***second tracking device*** having a ***second transceiver*** that is configured to . . . ***determine location coordinates of the first tracking device***" and "***communicate a second reply signal that comprises the location coordinates to a monitoring station connected to the user terminal in part responsive to verification of the first identification code***."  Yet the complaint fails to allege either of these claim elements are infringed at all, let alone by "who" or explain "how" the "Uber Platform" (or any other system) allegedly meets each limitation recited by the '289 Patent.  *See generally* Compl. ¶¶ 97-100.  Indeed, there is no explanation of what comprises a "second tracking device" nor plausible allegation that the "second tracking device" indeed has a "second transceiver"—let alone a "second transceiver that is configured" to "determine location coordinates of the first tracking device" and to "communicate a second reply signal that comprises the location coordinates to a monitoring station connected to the user terminal in part responsive to verification of the first identification code" as required by the claim.  At best, the pleadings set forth a conclusory allegation that "the Uber Platform also comprises a second tracking device which transmits and receives signals and thus contains at least one transceiver that is the second transceiver." *Id*. ¶ 99.  However, as courts time and again have held, bald conclusory recitation of claim elements, without more, do not satisfy Rule 12(b)(6) pleading requirements.  *See, e.g.,*

---

[2] Although asserted claim 8 of the '289 Patent purports to be a "system" claim, it recites method steps and is pled like a method claim in LBT's complaint.  *See* Compl. ¶ 101 (alleging in part induced infringement of the "claimed methods"); *see also generally id.* ¶¶ 92-94, 97-101. Accordingly, the '289 Patent asserted claim should be treated as a method claim for purposes of a Fed. R. Civ. P. 12(6)(6) analysis.  *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1340 n.3 (Fed. Cir. 2016) (finding "the 'system' claims here recite method steps, and the Amended Complaint pleads the system claims like method claims" and holding "[t]herefore, we, like the district court, treat them as method claims for this 12(b)(6) analysis").

*Bot M8 LLC*, 4 F.4th at 1355 ("[M]ere recitation of claim elements and corresponding conclusions, without supporting factual allegations, is insufficient to satisfy the *Iqbal*/*Twombly* standard.").

Furthermore, even assuming, *arguendo*, that such allegations were sufficient to establish existence of a "second tracking device" that contains a "second transceiver" (which they are not), the pleadings are entirely devoid of any allegation, let alone explanation of "who" uses the purported "second tracking device" with a "second transceiver" and "how" (or if at all) it is used to "determine location coordinates of the first tracking device" and "communicate a second reply signal that comprises the location coordinates to a monitoring station connected to the user terminal in part responsive to verification of the first identification code" as required by the claim. LBT's apparent pleading of these claim elements—namely, that "the Uber Platform compares the identification information sent by the driver with the identification information regarding the driver that is listed in the Uber system" and that "the Uber Platform's authentication system determines whether there is a verification of the driver's identification information contained in the driver's signal and that it is contained in the system" and then if (and only *if*) "there is a verification, the Uber Platform then transmits a signal which comprises location information of the first tracking device to the user's smartphone" (Compl. ¶ 100)—is inapposite at best, and nonsensical at worst. At bottom, LBT's pleading fails to allege the accused "Uber Platform" system contains the requisite components as required by the asserted claim, let alone plead facts sufficient to show that Uber makes or uses the entire claimed system. For these reasons, LBT's allegations of infringement of the '289 Patent should be dismissed. *See, e.g.*, *Centillion Data Sys.*, 631 F.3d at 1286, 1288.

2.      **LBT Fails to Allege Direction or Control Required to Show "Joint" Infringement**

LBT's allegations rely on multiple actors for infringement of every asserted claim.  *See, e.g.*, Compl. ¶ 24.  Accordingly, LBT must plausibly allege joint infringement of each asserted claim that satisfies the *Twombly/Iqbal* pleading standard.  *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016).  "[A]llegations of joint infringement require elements beyond those for the more typical act of direct infringement."  *Id*. at 1339.  For a complaint alleging joint infringement "[t]o survive a motion brought under Rule 12(b)(6), [it] must plausibly allege that Defendants exercise the requisite 'direction or control' over the performance of the claim steps, such that performance of every step is attributable to Defendants."  *Id*. at 1340.  To plausibly allege joint infringement, LBT is required to "plead 'facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction and control' over the other's performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party.'"  *De La Vega,* 2020 WL 3528411, at *4 (quoting *Lyda,* 838 F.3d at 1339).  For the reasons explained below, LBT's joint infringement claims fail as a matter of law for all Asserted Patents because LBT does not—and cannot—allege that Uber makes the "smartphone" alleged to perform multiple claim elements in every Asserted Patent, nor that Uber directs or controls the manufacturers of alleged "smartphones."

Every asserted claim of the four Asserted Patents recites steps that must be performed solely by a "smartphone," and LBT does not plead to the contrary.  *See, e.g.*, Compl. ¶¶ 67-68 (**Count I**, alleging the "***smartphone communicates and send*** [sic] position information," the "***smartphone calculates*** location data," and the "***smartphone transmits*** its location data") (emphases added); ¶¶ 82-84 (**Count II**, alleging the "***smartphone receives*** a signal from the

Uber Platform," the "*smartphone receives* a signal from a GPS satellite system," the "*smartphone also receives* signals from multiple cell towers," the "*smartphone determines* its location at least in part by utilizing a GPS satellite signal and/or cell tower signal(s)," and the "*smartphone transmits* its location data" (emphases added); ¶ 98 (**Count III**, explaining the "*first tracking device*" referenced in the asserted claim is "namely an Uber driver's *smartphone*" and that "[a] *smartphone contains a transceiver*," and alleging the "*smartphone is configured to receive* a first request signal" and the "*smartphone is further configured to transmit* a first reply signal" as required in the asserted claim) (emphases added); ¶¶ 118, 126 (**Count IV**, explaining that "*smartphones constitute 'tracking devices*,'" at least because they contain transceivers, and the '355 Patent broadly describes 'tracking device' as 'any integrated circuit (IC), chip, chip set, system-on-a-chip, microwave integrated circuit (MIC), Monolithic Microwave Integrated Circuit (MMIC), low noise amplifier, power amplifier, transceiver, receiver, transmitter and Application Specific Integrated Circuit (ASIC) that may be constructed and/or fabricated'" and alleging that the "*smartphone sends* a reply signal") (emphases added).

These allegations are insufficient because, as LBT's allegations concede, Uber does not make or sell smartphones. *See generally* Compl. ¶¶ 24, 59, 77, 92, 108. Under similar circumstances, other courts have dismissed infringement actions. *See, e.g., Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, No. 2:15-cv-1955-JRG, 2016 WL 3542430, at *4 (E.D. Tex. 2016). In *Ruby Sands*, the plaintiff definitively alleged in its complaint that the required claim limitations to a "transfer device," a "reader," and a "display" were "met by a mobile device or components of a mobile device." *Id*. The court granted the defendant's motion to dismiss, with prejudice, finding that "assuming all facts pleaded in the Amended Complaint are true, Ruby Sands makes no factual allegations that even remotely suggest that CNB, a bank, makes, uses, offers to sell, or sells mobile devices." *Id*. Here, LBT similarly alleges, for each count in the complaint, that

13

required claim limitations are met solely by a "smartphone."  Yet, LBT does not—because it cannot—make even a conclusory allegation (let alone assert facts sufficient to show) that Uber makes or sells smartphones.  Nor does LBT allege that Uber has direction or control over third parties that do make and sell smartphones, such as Apple or Samsung.  At best, and in connection with Count III only, LBT makes the bare-bones, conclusory assertion that "[b]ecause the Uber driver's smartphone is used in the context of providing services via Uber, the driver's smartphone is part of a system under the control of Uber."  Compl. ¶ 98.  Such a conclusory allegation is far from sufficient under the required pleading standard of *Twombly*/*Iqbal* and cannot be accepted as true.  *See, e.g.*, *Bell Atl. Corp.*, 550 U.S. at 545 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a ***plaintiff's obligation*** to provide the 'grounds' of his 'entitlement to relief' ***requires more than labels and conclusions***, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.") (emphases added).

For this independent reason, LBT's complaint should be dismissed with prejudice.

**B.**     **LBT's Induced Infringement Claims Should Be Dismissed**

**1.**     **LBT Fails to Plead Pre-Suit Knowledge**

Claims for induced infringement require "knowledge of the patent in suit and knowledge of patent infringement."  *Commil USA*, 575 U.S. at 639;  *see also Global-Tech Appliances*, 563 U.S. at 765-66 (Indirect infringement requires "knowledge of the existence of the patent that is [allegedly] infringed" and "knowledge that the induced acts constitute patent infringement.").

LBT does not allege, let alone plead facts sufficient to show, pre-suit knowledge of any of the Asserted Patents.  Accordingly, LBT has failed to allege a claim of pre-suit induced infringement.  *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) ("For

an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" (alteration in original.)); *see also Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) ("To state a claim for induced infringement, the plaintiff must allege that the defendant knew of the patent."). To the extent LBT's claims for induced infringement purport to cover allegedly infringing conduct that occurred before the complaint was filed, such claims must be dismissed. *See Affinity Labs of Tex.*, 2014 WL 12551207, at *5.

LBT also alleges that Uber has induced infringement "with knowledge" and "with the actual intent to cause the acts which it knew or should have known would induce direct infringement and/or willful blindness of a high probability of infringement." Compl. ¶¶ 69, 85, 101, 128. However, LBT does not allege, let alone plead facts sufficient to show knowledge of infringement or willful blindness. LBT's conclusory allegation that Uber had the requisite knowledge and intent for induced infringement is insufficient. *See Affinity Labs of Tex.*, 2014 WL 12551207, at *3 ("[A] claim of induced infringement 'must contain facts plausibly showing that the defendants specifically intended their customers to infringe the asserted patent and knew that the customer's acts constituted infringement.'").

## 2. LBT Fails to Adequately Plead Underlying Acts of Direct Infringement

"A finding of direct infringement is predicate to any finding of indirect infringement." *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1331 (Fed. Cir. 2017); *see also Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement . . . ."). It is the patentee's "burden to show direct

infringement for each instance of indirect infringement."  *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006).

As explained above, LBT fails to allege a plausible claim for direct infringement for the '724, '855, and '289 Patents (*see* Section IV.A.1), and also fails to plausibly allege joint infringement for any of the Asserted Patents (*see* Section IV.A.2).  Because direct infringement is required for indirect infringement, LBT's indirect infringement claims necessarily must be dismissed.  *See In re Bill of Lading*, 681 F.3d at 1333 ("It is axiomatic that '[t]here can be no inducement or contributory infringement without an underlying act of direct infringement.'" (quoting *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004)); *see also Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-CV-876-SDJ, 2020 WL 6781566, at *5 (E.D. Tex. Nov. 17, 2020) ("Where a plaintiff has not adequately pleaded an underlying act of direct infringement, theories of indirect infringement must be dismissed.").

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Uber respectfully requests that the Court dismiss LBT's infringement claims with prejudice.

Dated:  January 27, 2022                              /s/ Ryan K. Yagura

Luann L. Simmons (*Pro Hac Vice* pending)
lsimmons@omm.com
Betelhem Zewge Gedlu (*Pro Hac Vice* pending)
bgedlu@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center
28th Floor
San Francisco, California 94111-3823
Telephone: 415-984-8700
Facsimile: 415-984-8701

Ryan K. Yagura (Tex. Bar No. 24075933)
ryagura@omm.com
Nancy L. Schroeder (*Pro Hac Vice* pending)
nschroeder@omm.com
James Yang (*Pro Hac Vice* pending)
jamesyang@omm.com
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, California 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

Eberle Schultz (*Pro Hac Vice* pending)
eschultz@omm.com
**O'MELVENY & MYERS LLP**
Time Square Tower
7 Time Square
New York, New York 10036-6537
Telephone: 212-326-2000
Facsimile: 212-326-2061

***Attorneys for Defendant Uber Technologies, Inc.***

17

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on January 27, 2022, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Michael O'Donnell*
Michael O'Donnell