**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| LBT IP II LLC,<br><br>    Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>    Defendant. | Case No. 6:21-cv-01210-ADA<br><br>**JURY TRIAL DEMANDED** |

**UBER TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF ITS
<u>MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 1

    A. LBT's Direct Infringement Claims Are Inadequately Pled .................................... 1

    B. LBT's Joint Infringement Claims Are Inadequately Pled ...................................... 5

    C. LBT's Induced Infringement Claims Should Be Dismissed .................................. 8

III. CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 9

*BillJCo, LLC v. Apple Inc.*,
  No. 6:21-CV-00528, 2022 WL 299733 (W.D. Tex. Feb. 1, 2022) ..................................... 9, 10

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ................................................................................................... 5

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006) ................................................................................................ 9

*Energy Coal v. CITGO Petroleum Corp.*,
  836 F.3d 457 (5th Cir. 2016) .................................................................................................... 3

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
  870 F.3d 1320 (Fed. Cir. 2017) ................................................................................................ 8

*Limelight Networks, Inc. v. Akamai Technologies., Inc.*,
  572 U.S. 915 (2014) .................................................................................................................. 2

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,
  No. 6:20-CV-008876-ADA, 2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) ...................... 9, 10

*Proxense, LLC v. Target Corp.*,
  No. 6:20-CV-879-ADA, 2021 WL 3824690 (W.D. Tex. July 28, 2021) ............................. 7, 8

*Quartz Auto Techs. LLC. v. Lyft, Inc.*,
  No. 1:20-CV-00719-ADA, 2021 WL 1177886 (W.D. Tex. Mar. 29, 2021) ............................ 7

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
  No. 5:19-CV-243-H, 2021 WL 3030066 (N.D. Tex. July 2, 2021) .......................................... 2

*USC IP Partnership, L.P. v. Facebook, Inc.*,
  No. 6:20-CV-00555-ADA, 2021 WL 3134260 (W.D. Tex. July 23, 2021) ............................. 5

*Vervain, LLC v. Micron Tech., Inc.*,
  No. 6:21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ...................... 2, 3, 4, 5

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997)) ................................................................................................................... 2

I.  **INTRODUCTION**

Unable to respond to the merits of Uber's arguments in its Motion to Dismiss, LBT attempts to sidestep the actual issues by "responding" to mischaracterized versions of Uber's arguments.  LBT's pleading is not sufficient.  Not under the law of this District, or the law of this Circuit, or the law of the US Supreme Court.  Not a single case, cited by either party—not from this District or any other court—applies a legal standard so low as to allow LBT to shirk its responsibilities that squarely apply at the pleading stage.  The factual allegations pled, when presumed true, must allow this Court to reasonably infer all of LBT's infringement claims are plausible.  Unfortunately for LBT, they do not.

Uber identified in its Motion the clear deficiencies in LBT's Complaint.  In its Opposition, LBT did not (because it cannot) identify the missing factual allegations—the what, the who, the how—much less demonstrate how the Complaint meets the minimum pleading requirements.  LBT instead chose to focus on an inapplicable and incorrect legal standard—one that Uber does not remotely suggest applies at this stage—and to argue against itself.  LBT's obvious deflection is an implicit concession of what Uber has argued all along—the pleadings are not sufficient and cannot be cured with amendment.  Tellingly, LBT does not seek leave to amend—not even to cure the handful of deficiencies it concedes and instead attempts to retroactively cure them in its Opposition.  The Court should dismiss LBT's Complaint with prejudice.

II. **ARGUMENT**

   A.  **LBT's Direct Infringement Claims Are Inadequately Pled**

In its Motion, Uber identified key limitations of the asserted claims of each of the '724, '855 and '289 Patents for which LBT failed to include any allegations at all in its Complaint, much less allegations sufficient to provide notice of what LBT accuses of practicing those

limitations.  Mot. at 6-11.  In its Opposition, LBT appears to suggest that it is not required to provide factual allegations sufficient to infer infringement for all claim limitations and instead that merely discussing infringement in the context of each patent—without factual allegations for each and every claim element—is somehow acceptable.  *See, e.g.*, Opp'n at 4-5, 10.  Not so.  Under years-long precedent, which the Supreme Court confirmed in *Limelight Networks, Inc. v. Akamai Tech., Inc.*, "the patent is not infringed unless **all the steps are carried out**. . . . '**Each element** contained in a patent claim **is deemed material**[.]'"  572 U.S. 915, 921 (2014) (citations omitted) (emphases added) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)).  *See also Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, No. 5:19-CV-243-H, 2021 WL 3030066, at *7 (N.D. Tex. July 2, 2021) ("[T]he Fifth Circuit's pleading standards, *Twombly*, and *Iqbal* require that a patent owner suing for patent infringement at least plead facts showing that the alleged infringer meets every limitation of the asserted patent claim.").

     Perhaps in anticipation that the Court will (correctly) reject LBT's argument that LBT is not subject to the same direct infringement pleading standard as everyone else, LBT takes a two-pronged approach and makes the same arguments for each patent.  **First**, LBT regurgitates its allegations for **other** limitations and touts the length of the Complaint to suggest that the quantity of its other allegations somehow makes up for its failure to plead any allegations at all regarding multiple claim limitations.  **Second**, in an implicit concession that its Complaint is deficient, LBT offers up post-Complaint musings about what "may" practice the limitations.  But what LBT now argues in its Opposition to Uber's Motion to Dismiss "may" constitute material claim elements is not an acceptable substitute for actual allegations in, or a cure for the deficiencies in, the Complaint—LBT "cannot rehabilitate its Complaint through its opposition." *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469, at *6 (W.D. Tex. Jan. 3, 2022)

(citing *Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 462 n.4 (5th Cir. 2016) ("The complaint may not be amended by the briefs in opposition to a motion to dismiss.")).

And even if LBT's post-Complaint proposals were pled, they would still fall short of the minimum pleading standard. LBT's opposition does nothing to explain, much less overcome, the inadequacies in its direct infringement allegations for each of the '724, '855 and '289 Patents:

**'724 Patent**. LBT's arguments regarding the '724 Patent are exemplary. LBT first copies its allegations for other claim limitations, none of which provide the missing allegations for the limitations identified in Uber's Motion. Opp'n at 6. LBT then concludes—without any basis or explanation—that "[f]rom these allegations, it is more than ***plausible*** that the [missing] '*reference signal*' [claim element] ***may be*** a signal from the Uber driver's phone, the [missing] '*first transmitter/receiver station*' [claim element] ***may be*** a first cell tower, and the [missing] '*second transmitter/receiver station*' [claim element] ***may be*** a second cell tower." *Id*. (emphasis added). LBT does not dispute that the Complaint fails to identify what allegedly constitutes the "reference signal," "first transmitter/receiver station," and "second transmitter/receiver station" claim elements that are necessary in order to practice multiple claim steps recited in asserted claim 13 of the '724 Patent. LBT's suggestions as to what "may" constitute the identified claim elements are untimely and do not constitute pleadings, but regardless, do not cure the deficiencies in the Complaint. *See Vervain*, 2022 WL 23469, at *2 ("[T]he complaint must support its entitlement to relief with 'factual content,' not just conclusory allegations that the accused product(s) meet every claim limitation.").

**'855 Patent**. LBT's arguments regarding the '855 Patent follows the same formula. For the '855 Patent, LBT concedes that its Complaint lacks any factual allegations identifying what

3

in Uber's system allegedly constitutes the recited "fourth signal" or "adjacent tracking device" and fails to identify "who" allegedly transmits the recited "fourth signal" from the "adjacent tracking device." LBT then suggests it is "more than plausible that the adjacent tracking device *may be* a cellular tower (among other devices), that the 'fourth signal' *may be* a signal provided by that tower, and that the 'determining' is conducted by the driver's smartphone that runs the Uber mobile application." Opp'n at 8 (emphasis added).

**'289 Patent**. Likewise, for the '289 Patent, LBT concedes the Complaint does not allege what comprises a "second tracking device," if the "second tracking device" has a "second transceiver," or whether the "second transceiver" "is configured" to "determine location coordinates of the first tracking device" and to "communicate a second reply signal that comprises the location coordinates to a monitoring station connected to the user terminal in part responsive to verification of the first identification code," as required by asserted claim 8 of the '289 Patent. LBT then suggests it is "more than plausible, based on LBT's allegations, that the second tracking device is the Uber Platform, and that the Uber Platform *may* communicate a second reply signal to the rider's smartphone using a mobile telephone network." *Id*. at 9 (emphasis added).

None of the cases LBT cites, from this District or from any other court, support LBT's casual take on the pleading requirement. For example, LBT argues that *Vervain* holds that a "blanket element-by-element pleading standard for patent infringement" is not required. 2022 WL 23469, at *2. The Court in *Vervain*, however, explained that "[t]he level of detail required to meet that standard depends on multiple factors, not limited to 'the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device.' Under any standard, however, the complaint must

4

support its entitlement to relief with 'factual content,' not just conclusory allegations that the accused product(s) meet every claim limitation." *Id.* (quoting *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021)).

Likewise, in *USC IP Partnership, L.P. v. Facebook, Inc.*, USC's complaint met the minimum pleading standards: it "sufficiently identified an 'intent engine' as required in the asserted claim" and explained "how an 'intent engine' is used in the accused Facebook product." No. 6:20-CV-00555-ADA, 2021 WL 3134260, at *2 (W.D. Tex. July 23, 2021). Here, in stark contrast to USC's complaint, LBT's Complaint is completely silent as to the identity of multiple required claim elements, and clearly therefore also entirely silent as to how the missing required claim elements are used in the accused Uber product.

Because LBT failed to include any allegations at all regarding several claim limitations of the asserted claims of the '724, '855 and '289 Patents, this Court should dismiss LBT's direct infringement claims for these three patents.

### B. LBT's Joint Infringement Claims Are Inadequately Pled

In the Complaint, smartphones are essential to all of LBT's infringement allegations, but, as Uber explained in its Motion, LBT fails to adequately plead that Uber directs or controls these alleged smartphone activities. And now, in its Opposition, LBT seems to argue that asserted claim limitations reciting location determination are performed by the smartphone. *See, e.g.*, Opp'n at 6, 8-9. But LBT still fails to allege that Uber itself performs or has the requisite direction or control over that allegedly infringing activity. LBT's failure to allege who or what allegedly practices the material location determination limitations recited in each of the Asserted Patents is fatal to its Complaint and requires dismissal.

LBT does not allege that Uber itself practices these asserted claim limitations or is involved at all in the location determination of a tracking device—nor could it. *See id.* at 13.

5

Indeed, in its Complaint, LBT alleges that the "smartphone" (which can encompass a variety of hardware and software components outside of Uber's direction and control) performs the recited location determination limitations. For example, for the '724 and '855 Patents, LBT alleges that "the Uber driver's smartphone calculates location data" and that "the Uber driver's smartphone determines its location." *See, e.g.*, Compl. ¶¶ 68, 84. For the '289 and '355 Patents, LBT alleges only that "the Uber Platform [] transmits a signal which comprises location information of the first tracking device" and that "the Uber Rider Application on the customer's smartphone displays the location coordinates of the Uber driver's smartphone on the map display"—not that Uber actually determines the recited device locations. *Id.* ¶¶ 100, 127.

In its Opposition, LBT argues, for the first time, that Uber "directs and controls all infringing activity," quoting the same allegations from the background section of its Complaint that Uber has already argued are not sufficient. Opp'n at 11. But as Uber explained in its Motion, LBT's joint infringement claims fail to meet the minimum pleading requirements: the pleadings fail to identify the "who" or the "what" that allegedly practices the material location determination steps, and fail to suggest, let alone allege, that Uber has the requisite direction or control over that allegedly infringing activity.

Unable to overcome this fatal defect in its Complaint, LBT's Opposition attempts a misdirect by mischaracterizing Uber's argument as relying on the fact that Uber does not make smartphones and then arguing that Uber "misses the point" because who makes smartphones isn't relevant. Opp'n at 11. But it is LBT, not Uber, that misses the point. The asserted claims expressly recite detailed steps for performing location determination, and LBT pled in its Complaint and argued in its Opposition that these location determination limitations are performed by smartphones. And, as Uber has repeatedly explained, LBT does not allege that

6

Uber has any direction or control over this allegedly infringing activity. LBT's allegations, therefore, fail to plausibly support direct infringement by Uber or joint infringement by Uber and some unidentified third party who allegedly practices the location determination limitations.

The two cases LBT cites as putative support, *Quartz Auto* and *Proxense*, provide no help. In *Quartz Auto*, "direction and control" and whether it was sufficiently pled were raised in the context of method claims (not system claims or control over cellphone manufacturers, as LBT seems to believe). Lyft argued that "Quartz unsuccessfully pled direct infringement of the . . . method claims by not pleading direction and control over the Rider app." *Quartz Auto Techs. LLC. v. Lyft, Inc.*, No. 1:20-CV-00719-ADA, 2021 WL 1177886, at *3 (W.D. Tex. Mar. 29, 2021). Lyft's argument, however, was misplaced because in its amended complaint the plaintiff alleged that "certain steps are performed by the Driver app running on the driver's mobile phone, while the remaining steps are performed on Lyft's server(s)"; Quartz did "not allege that the Rider app performs any recited step of the asserted method claims." *Id*. Direction and control over smartphone operating systems and manufacturers was not raised by the parties nor considered by this Court, and the method patent claims at issue did not require location determination of a tracking device. Accordingly, *Quartz Auto* is, at best, irrelevant to Uber's argument.

*Proxense* is similarly unhelpful for LBT. In that case, the core issue was "determining what constitutes 'indirect control' over an element in a system claim" and whether Proxense plausibly alleged that "Target customers indirectly control" a particular element required in the asserted system claim. *Proxense, LLC v. Target Corp.*, No. 6:20-CV-879-ADA, 2021 WL 3824690, at *3 (W.D. Tex. July 28, 2021). In denying Target's motion to dismiss, the Court explained that in *Intellectual Ventures* "the Federal Circuit clarified that 'to use a system, a

7

person must control (even if indirectly) and benefit from *each claimed component*.' However, it does not follow that to control each claimed component, the alleged infringer must *cause* the operation of each claimed component. Rather, the Federal Circuit explicitly defined control as 'the ability to place the *system as a whole* into service.'" *Id*. (quoting *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) (emphasis in original). As an initial matter, the asserted claim in *Proxense* is, and was treated as, a system claim, unlike the system claim asserted here, which LBT concedes should be treated as a method claim for the Court's Rule 12(b)(6) analysis. *See* Opp'n at 13 (arguing that a case concerning infringement of a system claim is "inapplicable" and "[i]n contrast" with the asserted claims at issue here). *Proxense* is further distinguishable, as it dealt with allegations of direct infringement by the customer of the defendant, not direct infringement by the defendant. Conversely, here LBT alleges direct infringement by Uber, not indirect infringement based on underlying direct infringement by Uber's riders or drivers or joint direct infringement by Uber and its riders or drivers. Furthermore, in *Proxense*, the system claim at issue did *not* include limitations directed to the process of transmitting a beacon, the operation that Target argued neither it or its customer performed or caused to be performed. In contrast, all of the asserted claims here, system and method, include limitations expressly directed to the process of determining device location—limitations for which LBT must provide factual allegations identifying who practices those limitations and how Uber allegedly has the requisite control over the conduct. LBT's joint infringement allegations must be dismissed because LBT fails to allege—and indeed cannot allege—that Uber performs the required location determination limitations or has the requisite direction or control over those who do.

### C. LBT's Induced Infringement Claims Should Be Dismissed

LBT does not argue that it sufficiently pled pre-suit knowledge in support of any claims

of pre-suit induced infringement. Opp'n at 14. Accordingly, LBT agrees that its pre-suit induced infringement claims should be dismissed. *Id.*

As to post-suit induced infringement, LBT fails to plead two essential requirements for a claim of post-suit induced infringement: direct infringement and specific intent to induce that infringement. *See BillJCo, LLC v. Apple Inc.*, No. 6:21-CV-00528, 2022 WL 299733, at *2 (W.D. Tex. Feb. 1, 2022). ***First***, LBT has not pled sufficient facts to plausibly infer direct infringement (*see* Sections II.B and II.C *supra*) or pled "facts sufficient to allow an inference that at least one direct infringer exists" (*BillJCo*, 2022 WL 299733, at *2). ***Second***, as Uber has already explained, LBT once again mischaracterizes Uber's argument that "LBT's conclusory allegation that Uber had the requisite . . . intent for induced infringement is insufficient" (Mot. at 15) and again—without citing any evidence or authority—insists that it has met its burden. To the contrary, LBT's conclusory, unsupported avowal that "it is obvious that Uber now knows of LBT's allegations and, to the extent it continues its infringement, that illegal action is plainly intended" (Opp'n at 14) only serves to underscore the paucity of LBT's pleadings. *See, e.g.*, *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-008876-ADA, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1, 2021) ("[A] plaintiff must allege a specific intent to induce infringement, which is 'evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.'" (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006)). As the Court explained in *BillJCo*, cited by LBT, in order to meet the factual plausibility standard, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *BillJCo*, 2022 WL 299733, at *1 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

9

In *BillJCo*, the Court found the complaint "adequately alleged Apple's specific intent to encourage third-party developers to infringe" where the plaintiff attached claim charts mapping claim limitations to "instructions from Apple-authored documentation pulled from Apple Developer" and "specifically referenc[ing] disclosures Apple personnel made at Apple's 2013 developers' conference." 2022 WL 299733, at *7. In stark contrast to the claim charts in *BillJCo*, LBT's lone allegation—that Uber "now knows"—is insufficient to support a reasonable inference of inducement. *See, e.g.*, *Monolithic Power Sys.*, 2021 WL 3931910, at *5 (holding that "prior knowledge of the asserted technology does not advance a plausible inference of induced infringement" and granting the defendant's motion to dismiss induced infringement claims).

For these reasons and those set forth in Uber's Motion, LBT's induced infringement claims should be dismissed.

### III.  CONCLUSION

For the reasons above and those stated in Uber's opening motion, Uber respectfully requests that the Court dismiss LBT's infringement claims with prejudice.

| | |
|---|---|
| Dated:  February 17, 2022 | By: */s/ Luann L. Simmons* |
| | Ryan K. Yagura (Tex. Bar No. 24075933)<br>ryagura@omm.com<br>Nancy L. Schroeder (*admitted pro hac vice*)<br>nschroeder@omm.com<br>**O'MELVENY & MYERS LLP**<br>400 S. Hope Street<br>Los Angeles, CA 90071<br>Telephone:  213-430-6000<br>Facsimile:  213-430-6407 |

Luann L. Simmons (*admitted pro hac vice*)
lsimmons@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

Eberle Schultz (*admitted pro hac vice*)
eschultz@omm.com
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Phone: (212) 326-2000
Fax: (212) 326-2061

***Attorneys for Defendant Uber Technologies, Inc.***

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on February 17, 2022, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Michael O'Donnell*
Michael O'Donnell
